| | |
|---|---|
| Debtor 1 | FATMATA C JOHN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the | NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE) |
| Case number | 18-52831 |

## Official Form 410S1

# Notice of Mortgage Payment Change                    12/15

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of creditor:** Real Time Resolutions, Inc.          **Court claim no.** (if known): _____

**Last 4 digits** of any number you use to identify the debtor's account:          1   2   3   5          **Date of payment change:** 2019-02-25
Must be at least 21 days after date of this notice

**New total payment:** $          3,079.91
Principal, interest, and escrow, if any

| Part 1: | Escrow Account Payment Adjustment |
|---|---|

1. **Will there be a change in the debtor's escrow account payment?**

   ☒ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment: $_____          New escrow payment: $ _____

| Part 2: | Mortgage Payment Adjustment |
|---|---|

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

   ☒ No
   ☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: _____%          New interest rate: _____%

   Current principal and interest payment: $          New principal and interest payment: $_____

| Part 3: | Other Payment Change |
|---|---|

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

   ☐ No
   ☒ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (*Court approval may be required before the payment change can take effect.*)

   Reason for change: Payment amount based on number of days in billing cycle

   Current mortgage payment: $ 3,034.07          New mortgage payment: $ 3,079.91

Case: 18-52831    Doc# 30    Filed: 02/04/19    Entered: 02/04/19 12:34:49    Page 1 of 14

| Part 4: | Sign Here |
|---------|-----------|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☑ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✖ /s/ Rose Velasquez                                         Date   02/01/2019
_____
Signature

Print:     Rose Velasquez                                    Title   Senior Analyst
           _____
           First Name   Middle Name   Last Name

Company    Real Time Resolutions, Inc

Address    1349 Empire Central Suite 150
           Number          Street

           Dallas                    TX    75247-4029
           City                      State       ZIP Code

Contact phone  888-741-1124                      Email  bankruptcy@rtresolutions.com

Case: 18-52831    Doc# 30    Filed: 02/04/19    Entered: 02/04/19 12:34:49    Page 2 of 14

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)**

In re:                                    )
FATMATA C JOHN                )
                                              )
                                              )     CHAPTER 13
                                              )     CASE NO.    18-52831
Debtors                             )

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the within and foregoing  notice of payment change upon the following by depositing same in the United States Mail, addressed as follows, with sufficient postage attached.

**SEABROOK LAW OFFICES**
**Attorney at Law**
**2055 JUNCTION AVE. #138**
**SAN JOSE, CA 95131-**

**DEVIN DERHAM BURK**
**Standing Chapter 13 Trustee**
**PO BOX 50013**
**SAN JOSE, CA 95150-0013**

**FATMATA C JOHN**
**3354 CASALEGNO CT**
**SAN JOSE, CA 95148-4345**

Dated        02/01/2019

Real Time Resolutions, Inc.

By: /s/ Rose Velasquez

1349 Empire Central, Suite 150
Dallas, TX 75247

Case: 18-52831    Doc# 30    Filed: 02/04/19    Entered: 02/04/19 12:34:49    Page 3 of 14

**COUNTRYWIDE HOME LOANS, INC.**

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the original.

DATE:        11/28/2005
BORROWER: FATMATA C. JOHN

*M. Brown*
Authorized Signature

Branch #: 0000027
2880 STEVENS CREEK STE 150
SAN JOSE, CA 95128-0000
Phone: (408)885-9262
Br Fax No.: (408)885-0842

PROPERTY ADDRESS: 3354 CASALEGNO COURT
SAN JOSE, CA 95148

### HOME EQUITY CREDIT LINE AGREEMENT AND
### DISCLOSURE STATEMENT

Date: 11/28/2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 17 below.) You will not make any loan before the fourth (4th) business day following the signing of this Agreement, except to the extent that the proceeds of this loan are for the purchase of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 13.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions **unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number.** I also agree to comply with any agreement between me and the Card Issuer:

A. <u>Account Access.</u> In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (06/05)(d)

Page 1 of 11

my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call 1-800-669-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS -- I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

G. Limitation of Liability. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

H. Termination/Suspension of Account. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

I. Cancellation/Expiration of Cards. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. Lost or Stolen Cards. I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use. You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. Unauthorized Transactions. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. Special Rule for Card Purchases. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS -- I SHOULD KEEP THIS NOTICE FOR FUTURE USE:
**Special Rule for Card Purchases.**
If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b) The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card Issuer mailed me the advertisement for the property or services.

## 4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee **FINANCE CHARGE**, as applicable, as described in paragraphs 8.D and 7.B(6), respectively. As periodic finance charges will accrue on my Account balance until it is fully repaid, any periodic finance charges incurred for the billing cycle in which full payment of the New Balance shown on the previous periodic statement is received by you will be reflected on my next periodic statement. If I want to include those finance charges with the payment of the New Balance shown on my previous periodic statement, I will contact
COUNTRYWIDE HOME LOANS, INC.

P.O. Box 10287, Van Nuys, CA 91419-0287
for details concerning the amount I must include.

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.
(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.
(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." <u>My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.</u>

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 280,000.00       . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**6. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is       N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be       N/A % and the initial **ANNUAL PERCENTAGE RATE** would be N/A %. These discounted rates will be in effect from the date of this Agreement until N/A             . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is  0.02192 % and the initial **ANNUAL PERCENTAGE RATE** is 8.000 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of <u>The Wall Street Journal</u> as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is    1.000 %.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above   18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**7. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

CONV
● HELOC - CA Agreement & Disclosure Statement                    Page 4 of 11
2C481-CA (06/05)

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

### B. Other **FINANCE CHARGES.**

(1) Points **FINANCE CHARGE.**

I agree to pay a Points **FINANCE CHARGE** of $ 0.00      at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A      at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(3) Settlement Agent **FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement:

Attorney's Fee

$ _____
$ _____
$ _____
$ _____
$ _____

(4) Miscellaneous **FINANCE CHARGES.**

I agree to pay the following miscellaneous **FINANCE CHARGES** at the time I sign this Agreement:

$ _____
$ _____
$ _____
$ _____

(5) Annual Maintenance Fee **FINANCE CHARGE.**

[X] I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 75.00      which you will to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does fall below $20,000.00      from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[ ] I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

(6) Low Balance Fee **FINANCE CHARGE.**

[ ] In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two (2) years of my Account. I further agree to pay a Low

Case: 18-52831    Doc# 30    Filed: 02/04/19    Entered: 02/04/19 12:34:49    Page 8 of 14

Balance Fee **FINANCE CHARGE** of $40 for each monthly billing cycle during the first two (2) years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 8.D.

## 8. OTHER CHARGES.

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within FIFTEEN days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment or $5.00, whichever is greater.

(2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| | |
| **LESS Amounts Paid by Lender** | $ _____ 0.00 |
| **Total Paid by Borrower** | $ _____ 0.00 |

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. ☒ I agree to pay an Account Termination Fee of $ 350.00 to cover your costs of processing and administering my Account, if I pay in full and terminate my Account with you and ask you satisfy my mortgage lien on or before fifth (5th) anniversary of this Agreement.

☐ I will not be charged an Account Termination Fee on this loan.

E. I agree to pay a Demand Statement Fee of $ 30.00 for furnishing a statement of the amount necessary to pay in full the debt evidenced by this Agreement. I agree to pay this fee upon payment in full of the Account.

F. I agree to pay a Reconveyance Preparation Fee of $ 45.00 for delivering a full reconveyance of the deed of trust securing the debt evidenced by this Agreement.

G. I agree to pay a Recording Fee to reimburse you for the actual cost imposed by the appropriate governmental office to record a full reconveyance of the deed of trust securing the debt evidenced by this Agreement, which is not to exceed $100.00.

**9. PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Deed of Trust (the"Deed of Trust") covering my dwelling located at
3354 CASALEGNO COURT, SAN JOSE, CA 95148
(the "Property"). The Deed of Trust is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Property is damaged or

destroyed and whether or not any insurance proceeds are available.

## 10. SECTION INTENTIONALLY OMITTED.

**11. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Deed of Trust or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

## 12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

(1) the value of the Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Deed of Trust such that the value of the lien of the Deed of Trust is less than 120% of my Credit Limit;

(6) the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7) The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Deed of Trust is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

## 13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Deed of Trust;

(3) I sell or transfer title to the Property without first obtaining your written permission (also, see paragraph 19.N below);

(4) I fail to maintain insurance on the Property as required under this Agreement or the Deed of Trust;

(5) I act or fail to act and as a result a lien senior to the lien of the Deed of Trust is filed against the Property;

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (06/05)

Page 7 of 11

Case: 18-52831   Doc# 30   Filed: 02/04/19   Entered: 02/04/19 12:34:49   Page 10 of 14

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Property begins foreclosure under its security document;

(9) The Property is used for an illegal purpose which could subject the Property to seizure;

(10) I fail to pay taxes on the Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Property. Such action or inaction could include, for example, the following:

    (a) A judgment is filed against me;

    (b) I commit waste or otherwise destructively use or fail to maintain the Property;

    (c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d) I move out of the Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Deed of Trust;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

**14. SALE OF PREMISES:** I will not sell, transfer ownership of, mortgage, or otherwise dispose of my interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises, or transfer possession, whether by lease, rental, or otherwise, or discontinue to use the Premises as my primary and/or personal residence without your prior written consent.

**15. MY IMPORTANT OBLIGATIONS.** I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Deed of Trust.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Property.

F. I will not use or allow use of the Property for any illegal purpose.

G. I will not move out of the Property.

H. I will not permit a lien to be filed which takes priority over the Deed of Trust for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Deed of Trust such as:

    (1) my promise not to exceed my Credit Limit; and

(2) my "Important Obligations" listed in the Deed of Trust.

**16. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**17. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. <u>Termination by Me</u>. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 17.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

B. <u>Termination by You</u>. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 17.A above.

C. <u>Effect of Termination</u>. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 8.D above.

**18. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1) if the original Index is no longer available, you may change the Index and Margin;

(2) you may make any change I agree to in writing;

(3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**19. OTHER PROVISIONS.**

A. <u>Third Parties</u>. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Deed of Trust at any time without my consent.

B. <u>Additional Credit Reports and Appraisals</u>. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Property and the Deed of Trust as you may deem necessary from time to time. I will cooperate in having the Property reappraised.

C. <u>Tax Deductibility</u>. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. <u>Applicable Law</u>. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Property is located.

E. <u>Application of Payments</u>. You may apply payments and proceeds of the Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. <u>Failure to Perform</u>. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. <u>Waiver of Jury Trial</u>. I waive my right to a jury trial.

H. <u>Complete Understanding of the Parties</u>. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. <u>Waiver of Notice</u>. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. <u>Meaning of Words</u>. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. <u>Payment Marked "Payment in Full"</u>. I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170                                        .

L. <u>Enforcement</u>. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. <u>Notices</u>. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 19.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 19.M.

N. <u>Sale or Transfer of Property</u>. I understand that one of the provisions of the Deed of Trust states: "Upon default by Trustor [the owner(s) of the Property] in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Beneficiary [you] may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Beneficiary."

O. <u>Riders/Addenda</u>. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum                                     ☐ _____ Rider
☐ _____ Addendum                        ☐ _____
☒ Billing Rights Statement

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AG~~~~~~~ ~~~~~~~~ ~~~
RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND
CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO
ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I
ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED,
"IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED,
"WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE
OF RIGHT TO CANCEL.

Borrower: FATMATA C. JOHN                                          Date

Borrower:                                                          Date

Borrower:                                                          Date

Borrower:                                                          Date

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (06/05)

Page 11 of 11