Mariam S. Marshall, Esq. (Bar No. 157242)
Zunilda Ramos, Esq. (Bar No. 161114)
MARSHALL & RAMOS, LLP
ATTORNEYS AT LAW
Two Worlds Center
91 Gregory Lane, Suite 7
Pleasant Hill, California 94523
Telephone: (925) 446-4546
Facsimile: (925) 446-4549
mmarshall@marshallramoslaw.com

Attorneys for Trustee
FRED HJELMESET

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

FATMATA JOHN,

    Debtor.
_____/

Case No. 18-52831 MEH

Chapter 7

**No Hearing Required**

**TRUSTEE'S APPLICATION FOR ORDER APPROVING
SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. SECTION 363(b) and (f)**

TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES BANKRUPTCY JUDGE:

    Applicant FRED HJELMESET aka FRODE HJELMESET, trustee of the above-referenced Chapter 7 bankruptcy estate (the "Trustee"), hereby requests entry of an order approving: (1) the Trustee's short sale of real property of the estate known as, 3354 Caselegno Court, San Jose, California 95148, Assessor's Parcel No. 659-67-066, consisting of a single family residence (the "San Jose Property"), to Xingping He and Weiging Wei (the "Buyers"), for the sum of $1,755,000, free and clear of liens, encumbrances and interests pursuant to 11 U.S.C. Section 363(b) and (f), as set forth below.

    As set forth below, this is a **short sale** of the San Jose Property. The Trustee has

received an offer from the Buyers to purchase the San Jose Property free and clear of liens, encumbrances and interests for the total consideration of $1,755,000. All other monetary obligations of the Trustee, as seller of the San Jose Property, that would normally be paid at the close of escrow, such as real property taxes, broker sales commissions, escrow fees and other costs of sale, shall be paid through escrow from the sale proceeds of the San Jose Property. The estate shall receive a "carve out" of $100,000. The remaining net sale proceeds shall be paid to the first deed of trust holder, the second deed of trust holder and the judgment lien holder, as set forth in below. This is a true short sale as the total consideration is less than the total amount owed to the lien holders.

The Trustee accepted the Buyers' offer of $1,755,000, which is the highest and best offer received by the Trustee. The Trustee believes that a further bidding deadline on the San Jose Property will provide no additional benefit to the estate as the highest bid has already been received after exposing the San Jose Property to the market for a number of months. Moreover, with the secured lenders' payoff increasing every month, the Trustee believes that the sale must not be delayed by further deadlines and the San Jose Property must be sold as soon as possible in order to maximize the benefit to the estate.

The Trustee understands that, in order to complete the short sale process, the creditors holding the first and second priority liens on the San Jose Property, Nationstar Mortgage LLC, d/b/a Mr. Cooper (hereinafter "Mr. Cooper") and Real Time Resolutions, Inc. ("RTR"), must consent. The Trustee has procured Mr. Cooper and RTR's consent to sell the San Jose Property, as short sale, subject to Bankruptcy Court approval. Additionally, the Trustee has negotiated a discounted payoff of JP Morgan Chase Bank's, third position judgment lien against the San Jose Property in the amount of $1,000 (the "Judgment"). Mr. Cooper's first position deed of trust, RTR's second position deed of trust, and the Judgment will be paid at the reduced amount agreed to agreed by

the parties, in full satisfaction of their liens and interests. All approved costs shall be paid through escrow and the estate will receive the benefit of the $100,000 carve-out at closing.

The Trustee proposes to sell the San Jose Property free and clear of liens under 11 U.S.C. Section 363(b) and (f). If this motion is not approved, any and all benefit to the estate will be completely lost, as it is likely that Mr. Cooper will foreclose on the San Jose Property on account of its underwater status and the delinquent obligations. As discussed below, the Trustee believes that good cause exists to grant this sale motion to allow the estate to benefit from this favorable business opportunity.

## I. RELEVANT FACTS

Fatmata John (the "Debtor"), filed a voluntary Chapter 13 case on December 26, 2018, which was converted to a Chapter 7 case on February 8, 2019. The Trustee is the duly appointed and acting trustee of the Debtor's Chapter 7 bankruptcy estate. The Debtor and her husband Biamba John, are the legal and equitable owners of the San Jose Property and hold title to the San Jose Property as community property with right of survivorship. A true and correct copy of the title report for the San Jose Property, dated March 26, 2019, confirming community property status of property is attached as **Exhibit "A"** to the Declaration of Fred Hjelmeset, submitted herewith.

Pursuant to 11 U.S.C. Section 541(a)(2), all property held in community property, including the San Jose Property, became property of the within bankruptcy estate, upon the commencement of the Debtor's bankruptcy case.

In her bankruptcy schedules the Debtor did not assert an exemption in the San Jose Property. The Debtor further stated in her schedules that the San Jose Property had a value of $1,800,000, and was subject to two deeds of trust, i.e., a first deed of trust in favor of Nationstar Mortgage aka Mr. Cooper in the outstanding sum of $1,600,000.00 and a second deed of trust in favor of Real Time Resolutions, Inc. ("RTR"), in the sum of $437,000. See, Debtor's Bankruptcy Schedules A, C, and D filed

on January 23, 2019, collectively attached as **Exhibit "B"** to the Hjelmeset Declaration.

Consequently, in the absence of a Court approved short-sale, based on the Debtor's schedules, there would be insufficient equity in the San Jose Property to pay any liens recorded against the property other than Mr. Cooper's first deed of trust.

On April 15, 2019, the Trustee procured an order authorizing the employment of BK Global to assist the Trustee in negotiating a short sale of the San Jose Property. ("BK Global"). Additionally, on April 17, 2019, the Trustee procured an order authorizing the employment of Andy Buchanan and Intero Real Estate Services as the Trustee's real estate broker to market and sell the San Jose Property (collectively "Buchanan"). The combined compensation of BK Global and Buchanan is six percent (6%) of the total sale price of the San Jose Property (the "Commission"). Buchanan has procured the Buyers who have offered to purchase the San Jose Property for the sum of $1,755,000, as set forth in more detail below.

**Encumbrances Against the San Jose Property**

The San Jose Property is encumbered by following liens and judgments: (1) a first deed of trust in favor of Mr. Cooper in the approximate outstanding sum of $1,834,145.19 (See, **Exhibit "C"** to Hjelmeset Declaration); (2) second deed of trust in favor of RTR in the approximate sum of $437,546.09 (See, **Exhibit "D"** to Hjelmeset Declaration); and (3) judgment in favor of JP Morgan Chase Bank in the amount of $1,611.51 (the "Judgment") (See, **Exhibit "E"** to the Hjelmeset Declaration).

**Consent of First Deed of Trust Holder, Mr. Cooper**

Pursuant to 11 U.S.C. Section 363(f)(2), on June 28, 2019, Mr. Cooper, consented to the short sale of the San Jose Property to the Buyers for the sum of $1,755,000 (the "Sale Proceeds"). From the Sale Proceeds, Mr. Cooper has authorized a payment of $28,000, in full satisfaction of RTR's second deed of trust against the San Jose Property. In addition, from the Sale Proceeds Mr. Cooper has also agreed to pay the sales Commission, a $100,000 carve out payment of the estate, an $850 payment to the estate for the Trustee's liability insurance, the outstanding and unpaid real property

taxes, all reasonable and necessary closing costs, and a negotiated payout on the Judgment, directly from escrow. A condition of the sale is that the sale must close on or before August 16, 2019, and the San Jose Property must be delivered vacant to the Buyers. All net proceeds remaining after payment of the liens and expenses set forth above, shall be remitted to Mr. Cooper in full satisfaction of Mr. Cooper's first deed of trust. (See, **Exhibit "C"** to the Hjelmeset Declaration).

**Consent of Second Deed of Trust Holder, RTR**

RTR holds a second deed of trust against the San Jose Property. RTR has agreed to accept a negotiated payment of $28,000, in full and final settlement and release of its entire second position deed of trust. The $28,000, negotiated payment shall be paid to RTR upon consummation of the sale of the property, directly from escrow, from the Sale Proceeds of the San Jose Property. The Trustee is selling the San Jose Property free and clear of RTR's second deed of trust pursuant to 11 U.S.C. Section 363(f)(2), as RTR has consented to the sale of the property in exchange for a payment of $28,000. (See, **Exhibit "F"** to the Hjelmeset Declaration).

**Sale Free and Clear of JPMorgan Chase Bank Judgment Lien**

JPMorgan Chase Bank procured the Judgment against the Debtor's husband, Biamba John in the amount of $898.45, which abstract of Judgment was recorded against the San Jose Property on October 10, 2011, in the official records of the Santa Clara County Recorder's office as instrument number 21356568. (See, **Exhibit "A"** to the Hjelmeset Declaration). The Judgment is junior in priority to the first deed of trust of Mr. Cooper and the second deed of trust of RTR. The current outstanding balance owed in the Judgment is $1,611.51.

JPMorgan Chase Bank has agreed to accept a discounted payoff of $1,000.00 in full satisfaction of its Judgment. (See, **Exhibit "G"** to the Hjelmeset Declaration).

**Carve Out Payment to the Bankruptcy Estate**

The Trustee and Mr. Cooper have agreed that the bankruptcy estate shall receive a "carve out" payment of $100,000, from the Sale Proceeds of the San Jose Property,

free and clear of any and all security interests and liens of record against the San Jose Property (the "Carve Out Payment"). The estate is receiving the Carve Out Payment in exchange for: (1) the Trustee's efforts in marketing the San Jose Property; (2) securing qualified offers for the property; (3) shepparding the property through the Bankruptcy Court approval process; and (4) delivering the San Jose Property vacant to the Buyers. The Carve Out Payment to the estate is subject to Bankruptcy Court approval and shall be paid to the Trustee, directly from escrow, upon consummation of the sale. (See, **Exhibit "C"** to the Hjelmeset Declaration).

**Compensation of Real Estate Brokers and BK Global**

The Commission, in the amount of $105,300, shall be paid upon consummation of the sale, from the Sale Proceeds, directly from escrow, as follows: (1) $35,100, representing 2% of the sale price of the San Jose Property, to BK Global; (2) $35,100, representing 2% of the sale price of the San Jose Property, to Buchanan; and (3) $35,100, representing 2% of the sale price of the San Jose Property, to Buyers' broker.

**Sale of San Jose Property**

During the pendency of the Debtor's Chapter 13 case, the San Jose Property was listed for sale by the Debtor, who received no purchase offers. After conversion to Chapter 7, the Trustee listed the San Jose Property for sale for the sum of $1,649,950. In April, 2019, the Trustee received seven (7) offers for the San Jose Property, ranging from $1,615,000 to $1,755,000. The Buyers' offer was the highest offer received by the Trustee. (See, Hjelmeset Declaration). All offers received for the San Jose Property were "short sale" offers, and were forwarded to Mr. Cooper for review. The Trustee accepted the Buyers' offer, subject to: (1) Mr. Cooper's approval; (2) acceptance of the negotiated $28,000, short payoff to RTR; (3) the estate's receipt of the Carve Out Payment; and (4) Bankruptcy Court approval. A true and correct copy of the Buyers' offer is attached as **Exhibit "H"** to the Hjelmeset Declaration).

The Trustee is informed and believes that the Buyers have no connection with the Debtor and are not insiders of the Debtor, as that term is defined in 11 U.S.C. Section

101(4). The Trustee believes that the Buyers are good faith purchasers as that term is defined in 11 U.S.C. Section 363(m). See, Hjelmeset Declaration.

**Payments Directly from Escrow**

From the Sale Proceeds of the San Jose Property the Trustee intends to pay the following encumbrances and costs directly from escrow: (1) RTR the sum of $28,000 in full satisfaction and release of RTR's lien; (2) JPMorgan Chase Bank Judgment in the sum of $1,000; (3) Commissions in the amount of $105,300 representing six percent (6%) of the sale price of the property; (4) $100,000 Carve Out Payment to the bankruptcy estate, free and clear of all liens; (5) $850 payment to the bankruptcy estate for the Trustee's liability insurance; (6) outstanding and unpaid real property taxes; (7) all normal and ordinary costs of sale, including but not limited to escrow fees, and recording fees; and (8) all remaining net sales proceeds to Mr. Cooper, in an amount not less than $1,506,305.06.

This is a true short sale as the carve-out for the estate and other costs of sale will essentially be from funds that would otherwise go to Mr. Cooper, the first deed of trust holder on the San Jose Property, based on the large debt it is owed. (A true and correct copy of the HUD-1 Estimated Settlement Statement, reflecting the charges to be paid from escrow, is attached as **Exhibit "I"** to the Hjelmeset Declaration).

The Buyers are purchasing the San Jose Property "as is" and "where is" without warranties of any kind by the Trustee or his professionals. The sale of the San Jose Property is free and clear of all liens and encumbrances, claims, and interests, pursuant to 11 U.S.C. Section 363(b) and (f). Out of an excess of caution, any liens and interests against the San Jose Property that are not paid/resolved through escrow, shall attach to the estate's carve-out amount of $100,000, with the same force, effect, validity, and priority as such liens or interests had with respect to the San Jose Property prior to the sale.

**Trustee's Business Judgment**

It is the Trustee's business judgment that the sale of the San Jose Property to the

Buyers, on the terms and conditions set forth above, is in the best interests of the estate and its creditors. The scheduled value of the San Jose Property was $1,800,000. The property was listed for sale at $1,649,950. The Buyers' offer in the amount of $1,755,000, was the highest and best offer of the seven offers received by the Trustee after the San Jose Property had been exposed to the market for a period of six months. The Trustee believes that the price offered by the Buyers, exceeds that which would be realized through any other disposition of the property, such as a public auction. In addition, because the estate has been able to negotiate a "short sale" with Mr. Cooper and a negotiated short payoff to RTR, and a discounted payout on the JPMorgan Chase Judgment, the estate will receive a $100,000 Carve Out Payment, despite the fact that the San Jose Property is under water. See, Hjelmeset Declaration.

      The San Jose Property was the Debtor's primary residence on the date of commencement of the bankruptcy case. Accordingly, due to the favorable tax treatment afforded to taxpayers involving the sale of principal residences under the Internal Revenue Code, the Trustee anticipates that there will be no tax liability generated from the short sale of the San Jose Property. (See Hjelmeset Declaration).

      The proposed sale has been brought in good faith and has been negotiated on an "arms length" basis. The negotiations with the Buyers have resulted in a offer to sell the estate's interest in the San Jose Property that will have substantial benefit for creditors. (See Hjelmeset Declaration). Accordingly, the sale is in good faith and should be approved. The Trustee seeks such a finding pursuant to 11 U.S.C. Section 363(m).

      The Trustee further requests a waiver of the fourteen (14) day stay of the order approving the sale of the San Jose Property under Federal Rule of Bankruptcy Procedure 6004(h) to allow the sale of the San Jose Property to close as soon as possible after entry of the Court order approving the sale of the property.

## II. GROUNDS FOR APPROVAL OF SALE

**A.  Sale of the San Jose Property is the Best Interest of the Estate**

      Courts will ordinarily approve a proposed sale of estate property if there is good

business reason for the sale and the sale is in the best interests of the estate. In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bkrtcy.C.D.Cal. 1991), In re Lionel Corp., 722 F.2d. 1063, 1069 (2nd Cir. 1983).

Despite there being no equity in the San Jose Property because of the over-encumbrances, the proposed sale will generate unencumbered funds for the estate in the amount of $100,000. If this sale is approved $100,000 will be generated for the benefit of the estate's unsecured creditors.

The sale of the San Jose Property is based on good business reason and in the best interest of the estate. If the sale is not approved, the estate will loose all potential benefit from the San Jose Property, as there is no available equity in the property without the short sale and accompanying beneficial carve-out for the estate.

**B.     The Sale is Made in Good Faith**

A purchaser of property is protected from the effects of reversal on appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good faith and the appellant fails to obtain a stay of the sale. 11 U.S.C. Section 363(m).

Here, the proposed Buyers were procured solely as a result of traditional marketing efforts. The Trustee further submits that negotiations with the Buyers were made in an arms-length fashion. The Trustee has no relationship with the Buyers other than as buyer/seller and there was no self-dealing associated with the sale. (See HJELMESET Declaration).

Accordingly, the Trustee requests a finding that the Buyers are good faith purchasers of the San Jose Property, within the meaning of Section 363(m).

**C.     The Proposed Sale Should be Allowed Free and Clear of Liens**

Bankruptcy Code Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any of the following five conditions are met:

  (1) applicable non-bankruptcy law permits a sale of such property
    free and clear of such interest;

  (2) such entity consents;

> [...]
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest. 11 U.S.C. Section 363(f)

Section 363(f) is written in the disjunctive. Thus, only one of the enumerated conditions needs to be satisfied for Court approval to be appropriate.

**1.   Mr. Cooper has Consented**

Mr. Cooper, the first deed of trust holder on the San Jose Property has consented to the short sale of the property. See **Exhibit "C"** to the Hjelmeset Declaration.

**2.   RTR has Consented**

RTR, the second deed of trust holder on the San Jose Property has consented to the short sale of the property and has agreed to accept a discounted payoff of $28,000 in full satisfaction of its second position deed of trust. See **Exhibit "F"** to the Hjelmeset Declaration.

**3.   JPMorgan Chase Bank has Consented**

JPMorgan Chase Bank, holder of the third position Judgment lien recorded against the San Jose Property has consented to short sale of the property and has agreed to accept a discounted payoff of $1,000 in full satisfaction of its Judgment.

**4.   Junior Liens can be Wiped Out**

The Trustee is unaware of any other junior liens (except those specifically addressed above), against the San Jose Property. (See **Exhibits "A"** and **"B"** to the Hjelmeset Declaration). Notwithstanding, with respect to junior liens, the Trustee proposes to sell the San Jose Property under Section 363(f)(1) and (5) as permitted in California judicial and non-judicial foreclosures. California judicial and non-judicial foreclosure sales can be used to wipe out junior liens. See 11 U.S.C. Section 363(f)(1) (stating that a trustee may sell property of the estate free and clear of liens or other interests when applicable non-bankruptcy law permits such a sale free and clear of liens and interests). The BAP in Clear Channel stated that an example of a section 363(f) sale is the Uniform Commercial Code section 9-320, which permits a sale free and clear of a consensual security interest, if the collateral is sold in the ordinary course of

business of the debtor. (See, Clear Channel Outdoor, Inc. v. Knupfer, 391 B.R. 25, 41 (9th Cir. BAP 2008), fn. 21; Cal.Civ.Code Section 2924 et seq.) Similarly, bankruptcy courts have stated that the availability of foreclosure sales outside of bankruptcy represent a "legal or equitable proceeding", thus allowing a bankruptcy trustee to sell the subject property free and clear of liens under Section 363(f)(5). (See In re Jolan, Inc., 403 B.R. 866, 869-870 (Bkrtcy.W.D.Wash. 2009); In re Boston Generating, LLC., 440 B.R. 302, 333 (Bkrtcy.S.D.N.Y. 2010)).

In this case, if the first deed of trust holder BofA elected to foreclose on its interest in the San Jose Property outside of bankruptcy, every junior interest in the property would be extinguished notwithstanding the fact that the foreclosure sale price may or may not pay such extinguished interests in full, or not at all. In such a foreclosure proceeding, any junior liens would be forced to accept the distribution allowed by the resulting foreclosure sale price, in full satisfaction of its released lien. This hypothetical foreclosure sale situation clearly meets each element of Section 363(f)(5) to authorize the sale of the San Jose Property free and clear of all interests, as it clearly demonstrates that a junior interest "could be compelled, in a legal or equitable proceeding [i.e., a foreclosure sale], to accept money satisfaction [i.e., the distribution allowed pursuant to the foreclosure sale price] of such interest." 11 U.S.C. Section 363(f)(5).

Accordingly, the Court has the authority to approve the sale of the San Jose Property free and clear of any junior liens under Sections 363(f)(1) and (5).

**D.     The Court has the Authority to Waive the Fourteen-Day Stay of Sale**

Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise." FRBP 6004(h). Mr. Cooper, the first deed of trust holder, has consented to the short sale of the San Jose Property provided escrow closes on or before August 16, 2019 (See **Exhibits "C"** to the Hjelmeset Declaration). Consequently, the Trustee seeks to close

the sale of the San Jose Property as soon as practicable after entry of an order approving the sale.  The Trustee requests that the Court exercise its discretion under FRBP 6004(h) and waive the fourteen-day stay requirement.

## III. CONCLUSION

**WHEREFORE,** based on the foregoing, the Trustee respectfully submits that good cause exists for granting the sale motion and requests that the Court enter an order as follows:

1. The entire San Jose Property is property of the bankruptcy estate and the Trustee is authorized to sell the San Jose Property on an "as is", "where is" basis, without any warranties or representations, to the Buyers, for the total sum of $1,755,000.  All other monetary obligations of the Trustee on behalf of the estate, as the seller of the San Jose Property, that would normally be paid at the close of escrow, such as real property taxes, brokerage commissions, escrow fees, transfer taxes, closing costs and other costs of sale shall be paid through escrow from the sale proceeds at the close of escrow, without requiring the estate to place any funds into escrow or have any continuing obligation to the secured parties pursuant to the terms and conditions set forth in sale agreement, attached as **Exhibit "H"** to the Hjelmeset Declaration.

2. Sale of the San Jose Property free and clear of all liens, claims, interests, and encumbrances is approved, subject only to the consent of the first deed of trust holder, Mr. Cooper, the second deed of trust holder, RTR.

3. Authorizing the payment of liens, carve out to the bankruptcy estate, costs of sale and other expenses directly from the sale proceeds upon close of escrow, including but not limited to:

   A.   Payment of outstanding real property taxes, if any;

   B.   Payment of 6% real estate commissions $105,300,  shall be paid upon consummation of the sale, from the Sale Proceeds, directly from escrow, as follows: (1) $35,100, representing 2% of the sale

| | | |
|---|---|---|
| 1 | | price of the San Jose Property, to BK Global; (2) $35,100, |
| 2 | | representing 2% of the sale price of the San Jose Property, to |
| 3 | | Buchanan; and (3) $35,100, representing 2% of the sale price of the |
| 4 | | San Jose Property, to Buyers' broker; |
| 5 | C. | Carve Out payment to the bankruptcy estate of $100,000, plus $850 |
| 6 | | for the Trustee's liability insurance based on first deed of trust |
| 7 | | holder, Mr. Cooper's consent to the sale, or under Bankruptcy Code |
| 8 | | Section 506© as a surcharge against the collateral of Mr. Cooper for |
| 9 | | the costs the estate has incurred in the maintenance of its collateral |
| 10 | | (consisting of the San Jose Property), as well as the preservation |
| 11 | | and disposition of its collateral;; |
| 12 | D. | Discounted payoff of $28,000 to the junior second deed of trust |
| 13 | | holder, RTR, in full satisfaction of its deed of trust; |
| 14 | E. | Discounted payoff of $1,000 to JPMorgan Chase Bank in full |
| 15 | | satisfaction of its junior Judgment lien; |
| 16 | E. | Payment of closing costs and other monetary obligations the sale |
| 17 | | agreement requires the Trustee on behalf of the estate as seller of |
| 18 | | the San Jose Property to pay at the close of escrow (including but |
| 19 | | not limited to escrow charges, title charges, documentary transfer |
| 20 | | taxes, property transfer taxes), without requiring the estate to place |
| 21 | | any funds into escrow or have any continuing obligation to the |
| 22 | | senior lien holder, Mr. Cooper. In connection therewith, provided |
| 23 | | the estate receives the $100,000 carve-out at closing, authorizing |
| 24 | | the Trustee to resolve any disputes over the allowance and |
| 25 | | disallowance of costs and/or payoff amounts subject only to |
| 26 | | agreement between Mr. Cooper and the Trustee as part of the |
| 27 | | escrow closing without the need for further notice, hearing or Court |
| 28 | | order; and |

    G.  Payment of the balance of the sale proceeds to the first deed of trust holder, Mr. Cooper.

  4.  Approving the carve-out for the estate of $100,000 free and clear of any liens or interests, to compensate the estate *inter alia* for its efforts in connection with the sale of the San Jose Property.

  5.  Authorizing the Trustee to sign any and all documents necessary to consummate the sale of the San Jose Property pursuant to the terms of the sale agreement and the short sale approval letter from Mr. Cooper and RTR, including but not limited to any and all conveyances contemplated by the sale.

  6.  A determination by the Court that the Buyers are good faith purchasers with respect to the sale of the San Jose Property pursuant to Bankruptcy Code Section 363(m).

  7.  Waiving the fourteen-day stay of the order approving the sale of the San Jose Property under FRBP 6004(h), such that the sale of the San Jose Property can close as required by Mr. Cooper in its acceptance of the short sale.

  8.  And for such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated: July 25, 2019        MARSHALL & RAMOS, LLP

                /s/ Mariam S. Marshall
                Mariam S. Marshall
                Attorneys for Trustee
                FRED HJELMESET